**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.:  BK26-40073 |
| LAZY T TIRE & IMPLEMENT, LLC | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |

**BRUNSWICK STATE BANK'S OBJECTION TO
NORTHPOINT COMMERCIAL FINANCE LLC'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY
(Doc. 55)**

Brunswick State Bank ("BSB"), creditor and perfected secured party in the above-captioned case, objects to the Motion for Relief from the Automatic Stay (Doc. 55) filed by NorthPoint Commercial Finance LLC ("NorthPoint").[1]

NorthPoint's motion rests on the premise that NorthPoint holds a valid purchase money security interest ("PMSI") with superpriority status in certain inventory of Lazy T Tire & Implement LLC (the "Debtor"). NorthPoint has not established and cannot establish PMSI superpriority over BSB's prior perfected security interest. Absent superpriority, NorthPoint is a junior lienholder, and granting NorthPoint stay relief to liquidate collateral in which BSB holds a senior security interest would prejudice BSB's rights, and disrupt orderly administration of the estate.

I.   **BSB HOLDS THE SENIOR PERFECTED SECURITY
INTEREST IN THE DEBTOR'S COLLATERAL**

1.      BSB holds a perfected security interest in substantially all of the Debtor's assets, including but not limited to inventory, equipment, accounts, chattel paper, instruments, general intangibles, and all proceeds thereof.

2.      BSB's perfection predates NorthPoint's purported perfection. NorthPoint's UCC-1 financing statement against the Debtor was filed in 2020. Under the first-to-file-or-perfect rule of Neb. U.C.C. § 9-322(a)(1), BSB's security

---

[1] BSB and NorthPoint continue to communicate through counsel to work through some or all of the issues herein.

interest is senior to NorthPoint's in all collateral in which both parties claim an interest, unless NorthPoint can establish PMSI superpriority under Neb. U.C.C. § 9-324(b).

3.     NorthPoint cannot meet that burden.

## II. NORTHPOINT CANNOT ESTABLISH PMSI SUPERPRIORITY OVER BSB

4.     PMSI superpriority in inventory requires strict compliance with Neb. U.C.C. § 9-324(b). Among other requirements, the purchase money secured party must send an authenticated notification to the holder of a conflicting security interest, and that notification must be received before the debtor receives possession of the inventory. § 9-324(b)(2). NorthPoint's security agreement with the Debtor was executed on or about March 10, 2020.

5.     For all units delivered to the Debtor between March 10, 2020 and the date BSB received the required notification, NorthPoint's PMSI claim categorically fails to satisfy §9-324(b)(2). For these units, if any, NorthPoint holds at most a junior security interest subordinate to BSB's.

6.     A security interest attaches only if the debtor has authenticated a security agreement that provides a description of the collateral. Neb. U.C.C. § 9-203(b)(3)(A). "Authenticate" means to sign or execute a record, or to adopt or accept a record by attaching to or logically associating with the record an electronic sound, symbol, or process. Neb. U.C.C. § 9-102(a)(7).  The signature attributed to the Debtor's authorized manager, Timothy L. Twibell, was executed using the email credentials of Debtor's bookkeeper.

7.     This raises a fundamental question of whether the security agreement was authenticated by the Debtor within the meaning of §§ 9-203 and 9-102(a)(7). If the security agreement was executed by an unauthorized individual without actual or apparent authority, NorthPoint's security interest never attached, and NorthPoint has no security interest, PMSI or otherwise, in Debtor's property.

8.     A purchase money security interest exists only to the extent that the obligation was incurred as "all or part of the price of the collateral" or for "value given to enable the debtor to acquire rights in or the use of the collateral." Neb. U.C.C. § 9-103(a)(1)–(2). BSB's review of NorthPoint's financed invoices reveals that NorthPoint claims, or may claim, bundled non-purchase-money items into its floor plan advances, including labor charges, harness adapters, fuel fill dishes, and toolboxes.

9.     These items are not part of the "price of the collateral" and do not constitute enabling value under §9-103(a)(1)-(2). Their inclusion in NorthPoint's financed amounts contaminates NorthPoint's PMSI claim. To the extent NorthPoint cannot allocate payments between PMSI and non-PMSI obligations on a unit-by-unit, advance-by-advance basis, NorthPoint risks losing PMSI status entirely as to the affected units. See *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 441–42 (7th Cir. 2005) (requiring purchase money lender to trace purchase money obligations on an item-by-item basis to maintain PMSI status).

10.     NorthPoint's PMSI claim is or may be further compromised by its inability to trace proceeds to specific PMSI-encumbered collateral. BSB has identified at least the following specific deficiencies:

a.     An undocumented AgDirect double-hop trade-in resale that creates a gap in NorthPoint's chain of title and NorthPoint's claim to the resulting proceeds;

b.     At least three specific trade-in units that NorthPoint never financed and in which BSB holds a first-priority security interest, but which NorthPoint has claimed or seeks to claim;

c.     NorthPoint "Unidentified Funds" demand, which seeks to sweep additional invoice amounts into its PMSI claim without meeting the tracing requirements of Neb. U.C.C. § 9-315(b)(2). The burden of tracing identifiable proceeds rests on NorthPoint, and NorthPoint has failed to carry it.

11.     Notably, NorthPoint's security agreement with the Debtor does not merely claim a PMSI in specifically financed inventory. Section 3 of NorthPoint's security agreement contains a comprehensive, all-assets collateral grant covering "all of Borrower's personal and fixture property of every kind and nature whether now owned or hereafter acquired and wherever located." This is a blanket lien on all Debtor property, not a targeted PMSI. PMSI superpriority under § 9-324(b) extends only to specifically financed inventory items, not to NorthPoint's entire blanket lien. For all collateral outside the scope of validly established PMSI advances, NorthPoint is a junior lienholder under BSB's prior-perfected security interest.

### III. NORTHPOINT'S PMSI DEFICIENCIES DEFEAT ITS ENTITLEMENT TO STAY RELIEF

12.     NorthPoint's motion seeks stay relief to enable NorthPoint to repossess and liquidate inventory of the Debtor. But NorthPoint has not yet demonstrated that it holds a security interest superior to BSB's in any of the inventory at issue. A junior lienholder seeking stay relief to liquidate a senior lienholder's collateral over the senior lienholder's objection and without adequate protection is not entitled to such relief.

13.     Granting NorthPoint stay relief without first resolving the priority dispute between BSB and NorthPoint would permit NorthPoint to liquidate collateral in which BSB holds a senior security interest, dissipate proceeds that belong to BSB, and present BSB with a *fait accompli* that no subsequent adversary proceeding or contested matter could meaningfully remedy.

14.     Under 11 U.S.C. § 362(d)(1), relief from stay is appropriate only upon a showing of "cause, including the lack of adequate protection." NorthPoint cannot demonstrate cause for stay relief that would permit it to liquidate BSB's senior collateral. To the extent NorthPoint seeks relief under § 362(d)(2), the Debtor's lack of equity in the property inures to BSB's benefit as the senior secured creditor, not NorthPoint's.

### IV. IN THE ALTERNATIVE, ANY STAY RELIEF MUST BE CONDITIONED ON ADEQUATE PROTECTION

15.     If the Court is inclined to grant stay relief to NorthPoint notwithstanding the foregoing objections, BSB respectfully requests that any order be conditioned upon adequate protection of BSB's senior security interest. BSB's interest is an "interest in property" entitled to adequate protection under 11 U.S.C. §§ 361 and 362(d)(1).

16.     Appropriate adequate protection should include, at a minimum:

a.     All proceeds from any disposition of collateral by NorthPoint or the Chapter 7 trustee shall be held in escrow or a segregated account pending resolution of the priority dispute between BSB and NorthPoint;

b.     NorthPoint shall provide BSB with a complete, unit-level accounting of all collateral it has repossessed, holds, or seeks to repossess, including serial numbers, VINs, descriptions, and current location;

c.     NorthPoint shall not dispose of any collateral without providing BSB at least fourteen (14) days' prior written notice and an opportunity to be heard;

d.     Any order granting stay relief shall expressly provide that such relief is without prejudice to BSB's right to assert its senior security interest and to challenge NorthPoint's claimed PMSI superpriority in any subsequent adversary proceeding, contested matter, or other proceeding; and

e.     Such other and further protection as the Court deems appropriate.

## V. RESERVATION OF RIGHTS

17.     BSB expressly reserves all of its rights, claims, and defenses with respect to the validity, scope, perfection, authentication, and priority of NorthPoint's security interest and PMSI superpriority claim, including but not limited to the right to: (a) challenge NorthPoint's PMSI status in an adversary proceeding or contested matter; (b) assert BSB's first-priority security interest in any and all collateral, proceeds, and trade-in units; (c) seek turnover or recovery of collateral or proceeds improperly held or claimed by NorthPoint; (d) challenge the enforceability of NorthPoint's security agreement under Neb. U.C.C. § 9-203; and (e)

pursue any and all other remedies available at law or in equity. NorthPoint bears the burden of establishing a valid, enforceable, and properly perfected PMSI with superpriority status. Nothing in this Objection shifts that burden.

## CONCLUSION

WHEREFORE, BSB respectfully requests that the Court:

a.　Deny NorthPoint's Motion for Relief from Stay in its entirety, or, in the alternative, deny such motion pending resolution of the priority dispute between BSB and NorthPoint;

b.　If the Court grants stay relief, condition such relief upon the adequate protection provisions described in Section IV above;

c.　Include in any order a finding that such order is without prejudice to BSB's senior security interest and to BSB's right to challenge NorthPoint's claimed PMSI superpriority in any subsequent proceeding;

d.　Require NorthPoint to provide a complete, unit-level accounting of all collateral it claims, holds, or has repossessed; and

e.　Grant BSB such other and further relief as the Court deems just and proper.

BRUNSWICK STATE BANK,
By: _____/s/James P. Meuret_____
James P. Meuret, #23666
PO Box 429
Brunswick, NE 68720
jamesmeuret@gmail.com
402-518-3016

## CERTIFICATE OF SERVICE

I certify that on March 27, 2026, the foregoing Motion was filed with the Clerk of Bankruptcy Court using the CM/ECF system. I further certify that on the same date, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, to the following parties not listed on the matrix:
None.

_____/s/James P. Meuret_____