**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

IN RE:

LAZY T TIRE & IMPLEMENT, LLC

Debtors.

CASE NO. 26-40073

CHAPTER 7

**ORDER ON NORTHPOINT COMMERCIAL FINANCE, LLC'S MOTION FOR RELIEF FROM
THE AUTOMATIC STAY AND BRUNSWICK STATE BANK'S OBJECTION THERETO**

THIS MATTER COMES BEFORE THE COURT pursuant to NorthPoint Commercial Financial, LLC's ("**NorthPoint**") Motion for Relief From the Automatic Stay filed March 12, 2026 (**Doc. 45**) (the "**Motion for Relief**"), and the creditor Brunswick State Bank's ("**BSB**") Objection thereto filed March 27, 2026 (**Doc. 58**).   The Court held a hearing on the Motion for Relief on April 6, 2026, and the Court was advised that NorthPoint and BSB have now agreed to resolve the remaining issues regarding the Motion for Relief on the terms set forth in this Stipulated Order.   Being fully advised in the premises, with no other objections being raised, the Court finds as follows:

1.      Cause exists for granting the Motion for Relief to the extent reflected herein.

2.      NorthPoint has agreed to indemnify, defend, and hold harmless BSB from and against any and all claims, demands, actions, causes of action, losses, damages, and liabilities (excluding BSB's independently incurred attorney's fees and other BSB independently-incurred legal expense) hereafter arising out of or relating to the release

of the Settlement Amount (as defined herein) to NorthPoint, including but not limited to any claim by the Chapter 7 Trustee, Huntington Distribution Finance, Inc., or any other party in interest that the Settlement Amount or any portion thereof constitutes proceeds or property in which such party holds a superior interest. NorthPoint shall have no duty to indemnify BSB as to any BSB independently-incurred legal expense, but this sentence shall not reduce NorthPoint's duty to defend BSB.

3. NorthPoint asserts a purchase money security interest ("PMSI") in certain units of inventory financed by NorthPoint, as identified on Exhibit A to the Stipulation filed at Doc. 107 in Case No. 26-40060-BSK at a time this case was jointly administered with such Case No. 26-40060 (the "Original Stipulation"), and in proceeds thereof.  NorthPoint and BSB remain bound by the Original Stipulation except to the extent changed by this Order.

IT IS ORDERED:

1. BSB's Objection to the Motion for Relief is hereby deemed withdrawn.

2. To the extent reflected in this Order, NorthPoint's Motion for Relief from the Automatic Stay, and all relief requested therein, is hereby GRANTED effective immediately without a stay of enforcement pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(4), subject to the following:

3. BSB agrees to refrain from contesting or encouraging or supporting anyone else in contesting NorthPoint's PMSI in terms of its validity and enforceability or attachment to the entire Settlement Amount defined below or to the units in the Original Stipulation's Exhibit A.  NorthPoint agrees to refrain from contesting or encouraging or supporting anyone else in contesting BSB's Security Interest in terms of its validity and

enforceability or attachment.

4.   As concerns other units and proceeds:

a.  NorthPoint stipulates and agrees that trade-in inventory and trade-in resale proceeds are not proceeds of NorthPoint's PMSI collateral and are not subject to NorthPoint's claimed PMSI.  NorthPoint does not contest BSB's claim that trade-in inventory and trade-in resale proceeds are subject to BSB's perfected security interest and shall not encourage or support anyone else in so contesting.  However, this Order does not bar NorthPoint from asserting a junior security interest in such trade-in inventory and trade-in resale proceeds per NorthPoint's alleged blanket non-PMSI security interest.

b.  NorthPoint is granted relief from all bankruptcy stays as concerns any other units or proceeds in which NorthPoint has a PMSI.  However, nothing in this Order constitutes any finding that NorthPoint has a PMSI in any other units or proceeds.

5.   In full and final settlement of all claims by NorthPoint to the Checks (as defined in Paragraph 9 of the Original Stipulation), BSB shall cause to be remitted to NorthPoint the sum of One Hundred Thousand Eight Hundred Fifty Dollars ($100,850.00) (the "Settlement Amount") within ten (10) days of entry of this Order. Payment shall be made by wire transfer or cashier's check to NorthPoint or its counsel, as directed by NorthPoint in writing and solely payable to NorthPoint.  NorthPoint shall be free to deposit, negotiate, apply or otherwise dispose of the Settlement Amount without restriction by the Original Stipulation and in accordance with NorthPoint's rights under applicable law and

contractual rights.

6.  Upon payment of the Settlement Amount, NorthPoint's claim to the Checks shall be fully and finally satisfied, and BSB shall be free to deposit, negotiate, apply, or otherwise dispose of the remaining Checks (i.e., the Checks less the Settlement Amount) without restriction by the Original Stipulation and in accordance with BSB's rights under applicable law and contractual rights.

7.  The Settlement Amount is in full satisfaction of NorthPoint's claim to the Checks.

8.  The restrictions on the NorthPoint Units set for the Paragraph 6 of the Original Stipulation shall continue in effect, except that NorthPoint, or its designee, may upon entry of this Order, take possession of and dispose of the NorthPoint collateral including any proceeds in a commercially reasonable manner, and any such designee shall have the same rights and be subject to the same terms, conditions, and obligations applicable to NorthPoint under this Order.

9.  In the event it is determined by a court of competent jurisdiction that NorthPoint does not hold a valid and enforceable security interest or PMSI in any NorthPoint Unit:

a. As to any NorthPoint Unit not yet disposed of at the time of such determination, BSB's rights as a senior perfected lienholder shall revive, and NorthPoint shall promptly deliver possession of such unit to BSB or as BSB reasonably directs; and

b. As to any NorthPoint Unit that has been disposed of prior to such determination, NorthPoint shall be liable to BSB for the fair market value

of such unit as of the date of disposition less reasonable costs of disposition, plus interest at the rate provided by Neb. Rev. Stat. § 45-104 from the date of disposition until paid.

10.     Except as expressly provided herein, nothing in this Order shall be deemed an admission, waiver, release, or abandonment of any party's rights, claims, or defenses, including but not limited to:

    a.  BSB's rights under its perfected security interest, its Deed of Trust, and all loan documents, security agreements, and guaranty agreements with the Debtor or any other party;

    b.  BSB's rights with respect to any collateral, proceeds, or property not specifically addressed by the Original Stipulation; and

    c.  NorthPoint's rights with respect to any collateral, proceeds, or property not specifically addressed by the Original Stipulation, subject to the NorthPoint's PMSI security interest.

Dated this ___ day of April, 2026.

BY THE COURT

_____
Honorable Brian S. Kruse
Chief U.S. Bankruptcy Court Judge

Approved as to form and content:


*/s/  James P. Meuret*
**James P. Meuret, #23666**
PO Box 429
Brunswick, NE 68720
402-518-3016
jamesmeuret@gmail.com
Attorney for Brunswick State Bank


*/s/  Dustin J. Stiles*
**Dustin J. Stiles, #24200**
Baird Holm LLP
1700 Farnam St., Suite 1500
Omaha, NE 68102
402-636-8280
dstiles@bairdholm.com
Attorneys for NorthPoint Commercial Finance LLC